**SIGNED this 14th day of October, 2026**

**Rachel Ralston Mancl**
**UNITED STATES BANKRUPTCY JUDGE**

---

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

In re

DELORES LEE REYNOLDS,

Debtor.

No. 2:25-bk-50898-RRM
Chapter 7

---

TINA ASHWORTH ROBINETTE WARE, Individually,
TINA ASHWORTH ROBINETTE WARE, Administratrix of the Estate of William Joseph Robinette, Jr.,
MASON ASHWORTH ROBINETTE, and
FULLER ENTERPRISES, LLC,

Plaintiffs,

vs.

DELORES LEE REYNOLDS,

Defendant.

No. 2:25-ap-05017-RRM
Adversary Proceeding

# MEMORANDUM

APPEARANCES:

Mark L. Esposito, Esq.
Richard E. Ladd, Jr., Esq.
Penn, Stuart & Eskridge, PC
Post Office Box 2009
Bristol, Virginia 24203
*Attorneys for Plaintiffs*

Christopher D. Meyer, Esq.
John M. Lassiter, Esq.
Burr & Forman LLP
190 E. Capitol Street, Suite M-100
Jackson, Mississippi 39201
*Attorneys for Defendant*

**Rachel Ralston Mancl, United States Bankruptcy Judge.** In the words of the Chancery Court for Sullivan County, Tennessee, debtor Delores Lee Reynolds, "attempted to steal and/or fraudulently acquire Fuller Enterprises, LLC from the legal heirs of [her deceased brother] William J. Robinette, Jr." ("Will Robinette"). The plaintiffs in this adversary proceeding are Fuller Enterprises, the Estate of Will Robinette, and Will Robinette's legal heirs—his surviving spouse Tina Robinette (now "Tina Ware") and their son Mason Robinette. The debtor's attempt to "steal and/or fraudulently acquire" Fuller Enterprises was orchestrated in the Chancery Court for Sullivan County wherein the debtor, the decedent's father William J. Robinette, Sr. ("Joe Robinette"), and Jody Virgina Lynn Stewart, another of the decedent's sisters, (collectively, the "Chancery Plaintiffs"), filed a verified complaint seeking to appoint a receiver and establish ownership of Fuller Enterprises. The Chancery Court initially appointed a receiver but ultimately concluded "that the sworn statements and attestations" set forth by the Chancery Plaintiffs in their verified complaint, amended verified complaint, and sworn affidavits "lack[ed] any credibility," and that the evidentiary materials submitted by them to substantiate their claims of ownership were in fact "false, fraudulent, altered and/or forged documents."

On motions by Tina Ware, the Chancery Court held that the Chancery Plaintiffs were "Abusive Civil Action Plaintiffs" and that the Chancery Court proceeding they had initiated was an "Abusive Civil Action" pursuant to Tenn. Code Ann. § 29-41-101, *et seq*., filed "without probable cause, and with improper malicious intent" and "primarily to harass, annoy, and maliciously injure [Tina Ware]." Accordingly, the Chancery Court awarded Tina Ware $510,429.89 jointly and severally against the Chancery Plaintiffs for the attorney fees and costs she incurred in defending the Abusive Civil Action. In dismissing the action with prejudice, the Chancery Court also prohibited the Chancery Plaintiffs, individually or jointly, from instituting any civil action against Tina Ware for a period of four years and further prohibited the Chancery Plaintiffs from continuing any pending civil action or claim filed against Tina Ware. The Chancery Court subsequently awarded Tina Ware the additional amount of $45,117.93 against the Chancery Plaintiffs, jointly and severally, for the attorney fees and costs she incurred in defending their motion to alter or amend the Chancery Court's decision.

Under the order appointing a receiver and, in its discretion, the Chancery Court awarded Fuller Enterprises a judgment against the Chancery Plaintiffs, jointly and severally, in the amount of $103,230.31 for the fees the company paid to the receiver. The appointed receiver Richard Ray—who filed his own nondischargeability actions against the Chancery Plaintiffs—was awarded a judgment against the Chancery Plaintiffs, jointly and severally, in the amount of $380,319.29 for his billed but unpaid fees and costs incurred as the receiver for Fuller Enterprises. The Chancery Court found that the Chancery Plaintiffs' "request for the appointment of a receiver was made … under false pretenses, false representation, and actual fraud," as they lacked any valid interest in Fuller Enterprises. The court reasoned that but for the "willful and intentional false, misleading, and fraudulent assertions and fraudulent documents to support their Verified Complaint and Amended Verified Complaint, [the] Court would not have appointed the Receiver."

The Chancery Plaintiffs appealed to the Tennessee Court of Appeals. In affirming the decision of the Chancery Court, the appellate court granted Tina Ware's request for attorney fees and costs on appeal. The case was remanded to the Chancery Court for further proceedings, specifically for a determination of the reasonable attorney fees and costs on appeal. Those proceedings were forestalled initially by the Chancery Plaintiffs' application for permission to appeal, which the Tennessee Supreme Court denied, and now by the chapter 7 bankruptcy filings of the debtor and Joe Robinette (now deceased) in this court, and Ms. Stewart's chapter 7 bankruptcy filing in the Bankruptcy Court for the Northern District of Georgia.

The joint adversary complaint of Tina Ware, Mason Robinette, Fuller Enterprises, and the Estate of Will Robinette seeks a determination that their claims against the debtor are nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (6). The debtor moves for dismissal of the complaint on the basis that the "claims do not fit either discharge exception." Concerning Mason Robinette and the Estate of Will Robinette, the court agrees. As for Fuller Enterprises and Tina Ware, however, the allegations contained in their 136-paragraph, 34-page complaint together with the supporting and incorporated 30-page final judgment of the Chancery Court, when accepted as true, more than satisfy the elements of § 523(a)(2)(A) and/or (6).

I.

To survive the debtor's motion to dismiss made under Fed. R. Civ. P. 12(b)(6), the adversary "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The purpose of a Rule 12(b)(6) motion is to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Johnstone Supply of Detroit v. Rooks (In re Rooks)*, No. 16-33151, 2017 WL 4404272, at *3 (Bankr. N.D. Ohio Sept. 28, 2017) (quoting *Campbell v. Nationstar Mortgage*, 611 Fed. Appx. 288, 291 (6th Cir. 2015)). Accordingly, the court will assume that all well-pleaded facts are true, view them in a light most favorable to the adversary plaintiffs, and resolve any ambiguities in the adversary plaintiffs' favor. *Id.* (citing *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); and *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

For the exceptions listed under § 523(a) to apply, a threshold requirement must be satisfied—a debt must be owed to the plaintiff. *See Feldman v. Pearl (In re Pearl)*, 577 B.R. 513, 523 (Bankr. E.D. Ky. 2017) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)). Neither Mason Robinette nor the Estate of Will Robinette alleges that a debt is owed to either party individually. The complaint identifies Mason Robinette's connection through his one-half ownership interest in Fuller Enterprises. Specifically, the adversary plaintiffs' response to the debtor's motion states that "Mason Robinette is a 50% owner of Fuller Enterprises" and therefore he "has a nondischargeable interest for one-half of the amount the Chancery Court awarded to Fuller Enterprises." That statement reveals the problem instead of solving it. Under Tennessee law, a wrong to a corporation belongs to the corporation; shareholders have no individual right of action against third parties for wrongs or injuries to the corporation. *See Keller v. Est. of McRedmond*, 495 S.W.3d 852, 867–68 (Tenn. 2016). By extension this also holds true for limited liability companies and their members. *See* Tenn. Code Ann. § 48-249-502 ("A member has no interest in specific LLC property."). The Chancery Court found that "Fuller Enterprises, LLC, was a single member Tennessee LLC, with [Will] Robinette being the sole member and owner"

and that "the entirety of [his] membership and ownership interest in Fuller Enterprises, LLC pass[ed] through his (intestate) Estate … to his sole statutory beneficiaries: (1) his wife, Tina Robinette [Ware]; and (2) his son, Mason Ashworth Robinette." Fuller Enterprises pursued and obtained a judgment against the debtor. While Mason Robinette may benefit indirectly from the company's judgment, the judgment debt is not directly owed to him. From the court's reading of the adversary complaint, the Estate of Will Robinette does not assert a claim arising from the Chancery Court proceeding. The only allegations concerning the Estate are that the Chancery Plaintiffs "filed fraudulent sworn claims against the Estate," each in the amount of $2,121,137.67, based on the same "false claim of a one third (1/3) membership interest in Fuller Enterprises" as made in the Chancery Court and supported by the same operating agreement and promissory note that the Chancery Court concluded were forged. While grounds may exist for the Estate to file exceptions to the claims of the Chancery Plaintiffs in the probate matter, no liability on a claim—namely, a debt—has been alleged. Because the debtor owes no debt to either Mason Robinette or the Estate of Will Robinette, § 523(a) has no application to them, and therefore both parties will be dismissed as plaintiffs in this action.

II.

As a preliminary matter, it's the debtor's position that the allegations in the complaint fail to satisfy the pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, incorporated by Fed. R. Bankr. P. 7009, that the circumstances constituting fraud be stated with particularity.

> Rule [9(b)] has the "broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008). Therefore, "so long as a relator pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

*In re Grenier*, 430 B.R. 446, 451 (E.D. Mich. 2010), *aff'd,* 458 F. App'x 436 (6th Cir. 2012). In *Grenier* the court held that "the Complaint's reference to the state court fraud judgment provided Defendants with sufficient detail concerning the fraud to allow them to prepare a responsive

pleading." *Id.* The Chancery Court's fraud judgment here likewise provides the debtor the circumstances of fraud with particularity. And if that were not enough, paragraphs 12 through 114 under the Material Facts and Procedural History portion of the adversary complaint amply supply the "who, what, when, where, and how" regarding the fraud. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)). Together the adversary complaint and Chancery Court judgment provide fair notice to the debtor of the substance of the fraud so that she may prepare a responsive pleading.

Section 523(a)(2)(A) excepts from discharge a debt for money, property, or services obtained by false pretenses, a false representation, or actual fraud. The debtor asserts that the adversary plaintiffs have not established the elements for nondischargeability under § 523(a)(2)(A) as articulated by the Sixth Circuit in *Rembert*, which requires a material misrepresentation the debtor knew to be false, an intent to deceive, justifiable reliance by the creditor, and proximate causation of loss. *See Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998). The *Rembert* framework does not exhaust the reach of § 523(a)(2)(A). "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud … that can be effected without a false representation" because "a false representation has never been a required element of 'actual fraud'…." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359-362 (2016). "When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *Mellon Bank N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). "To except a debt based on actual fraud, the creditor must prove: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud." *Laake v. Goll (In re Goll)*, No. 23-13341 MER, 2026 WL 235947, at *9 (Bankr. D. Colo. Jan. 27, 2026).

> "'Actual fraud' has two parts: actual and fraud." *Husky International Electronics v. Ritz*, 578 U.S. 356, 360, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016). The word "actual," in the context of common-law fraud, denotes any fraud that involves moral turpitude or intentional wrong. *Id.* (quoting *Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1878)); *Field*, 516 U.S. at 69, 116 S. Ct. 437 (holding that the word "fraud" contains the elements ascribed to it at common law). The word

> "fraud" encompasses all the multifarious means that human ingenuity can design to gain an advantage over another, making a rigid and precise definition not only useless, but essentially unworkable. *See, Husky*, 578 U.S. at 360, 136 S. Ct. 1581; *see also, In re Hunter*, 535 B.R. at 213. Accordingly, anything that counts as "fraud" and that is done with wrongful intent is "actual fraud." *Husky*, 578 U.S. at 360, 136 S. Ct. 1581.

*Rable v. Childers (In re Childers)*, 651 B.R. 699, 733 (Bankr. N.D. Ohio 2023).

The debtor owes Fuller Enterprises a judgment debt of $103,230.31 for the fees it was required to pay to the receiver appointed by the Chancery Court. The findings of the Chancery Court leave no ambiguity as to how and why that debt arose. The Chancery Plaintiffs by "false pretenses, false representation, and actual fraud" established their purported ownership of Fuller Enterprises for the purpose of requesting the appointment of a receiver in furtherance of their attempt "to steal and/or fraudulently acquire Fuller Enterprises." Specifically, Fuller Enterprises alleges that in their application for the appointment of a receiver, the Chancery Plaintiffs produced a fabricated operating agreement bearing the forged signature of Will Robinette, along with other falsified documents to establish that ownership interest. The Chancery Court found that the "actions of falsifying documents, records, and information to support their claims" of ownership were "improper, willful, intentional, and malicious." The Chancery Court concluded that a receiver for Fuller Enterprises would not have been appointed "[b]ut for [the Chancery Plaintiffs'] willful and intentional false, misleading, and fraudulent assertions and fraudulent documents to support their Verified Complaint and Amended Verified Complaint." "In most jurisdictions it is held that where the appointment of a receiver is wrongfully made, causing the property of innocent persons to be wrongfully sequestered, that equity and jurisdiction require that the party at whose instance the wrong was done bear the burden." *Sklar v. Bernstein*, 7 Tenn. App. 593, 601–02 (Tenn. Ct. App. 1928); *see also* 75 C.J.S. *Receivers* § 458 (April 2026 Update) ("Ordinarily, one who causes or procures the wrongful appointment of a receiver is liable for all the damages caused thereby."). That is apparently what the Chancery Court did—entered judgment against the Chancery Plaintiffs to bear the burden of loss incurred by Fuller Enterprises that resulted from the wrongful appointment of the receiver. Fuller Enterprises alleges a debt for the services of the receiver that the Chancery Plaintiffs obtained by false pretenses, a false representation, and actual fraud.

The debtor argues that she received no cognizable financial benefit from the receiver's appointment and, therefore, the "obtained by" language of § 523(a)(2)(A) cannot be satisfied. The debtor states that "any 'benefit' the Receiver may have conferred was rendered pursuant to judicial appointment and for the court's administration of the receivership," and that the adversary "Plaintiffs' asserted debts are litigation-derived fee and expense awards imposed through judicial orders, not value 'obtained' from [the adversary] Plaintiffs by fraud." The thrust of the debtor's argument is that "[a] court-approved fee award does not constitute money, property, or services 'obtained by' fraud within the meaning of § 523(a)(2)(A) absent a plausible allegation that the debtor procured a benefit through the deception." (Emphasis added.) The debtor took the extraordinary step of lying to the Chancery Court to get a receiver appointed, which itself evidences the benefit she expected to obtain: appointment of a receiver which she believed would be advantageous to her falsely asserted claim of ownership in Fuller Enterprises.

The debtor relies on *Metcalf v. Waters (In re Waters)*, 239 B.R. 893 (Bankr. W.D. Tenn. 1999), for the proposition that § 523(a)(2)(A) requires a debtor to have personally received a benefit. *Waters* involved an attorney that concealed his negligence by lying to his clients for several months about the dismissal of their personal injury lawsuit. *Id.* at 896. The clients identified the fraud underlying their § 523(a)(2)(A) claim as the attorney's concealment of the dismissal. *Id.* at 901. The bankruptcy court reasoned that because the debtor's deception consisted of covering up a loss that had already happened, he did not procure anything: no money, property, or services were obtained by anyone as a result of his deception. *Id.* at 902-03. Although describing a circuit split in detail, the court specifically took no position on what benefit a debtor must receive for § 523(a)(2)(A) to apply. *Id.* at 902. The court suggested only that the Sixth Circuit "appears to favor" the benefits theory: the view that a creditor must prove the debtor directly or indirectly obtained some tangible or intangible financial benefit. *Id.* at 901-02 (*citing Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir. 1996)). That conclusion itself was drawn from *Brady v. McAllister*, which the *Waters* court carefully noted had not decided that question. *Id.* There was simply no need for the *Waters* court to decide what benefit a debtor must receive because it found that the deception at issue did not procure any money, property, or services that would cause § 523(a)(2)(A) to be applicable. *Waters* does not stand for the broad

proposition that the debtor would have this court accept.

Finally, the debtor contends there is no direct link between the fraud alleged and the appointment of the receiver, citing *Dell v. Ables* (*In re Ables)*, 302 B.R. 917 (Bankr. M.D. Fla. 2003), for the proposition that courts have rejected attempts to repackage fraud on a court as fraud against a party for professional fees. In *Ables* the debtor and his former wife retained counsel for an adoption, which was finalized. *Id.* at 919. However, the state court subsequently annulled the adoption, finding that the birth mother had been coerced into giving up her child. *Id.* The state court found that the debtor had committed a fraud on the court by signing the adoption petition, which falsely claimed a blood relationship with the birth mother. *Id.* The debtor's ex-wife filed a legal malpractice action for services rendered in connection with the adoption, and the attorneys filed a nondischargeability action against the debtor seeking to except from discharge any third-party claims that might arise. *Id.* The attorneys argued that the debtor's fraud on the court in signing the adoption petition was the predicate fraud for their § 523(a)(2)(A) claim, but the court found no causal connection between the debtor's fraud in signing the petition for adoption and the attorneys' provision of services. *Id.* The court reasoned that the state court made no finding that the debtor fraudulently induced the attorneys to represent him, and that for a debt to be nondischargeable under § 523(a)(2)(A) there must be a direct link between the fraud and the obtaining of services. *Id.* at 921–22. The present situation is markedly different. The Chancery Court explicitly cited the debtor's fraudulent actions as the express reason the receiver was appointed, and the causal connection missing in *Ables* is apparent on the face of the Chancery Court's judgment.

The adversary complaint alleges that the Chancery Plaintiffs attempted to steal Fuller Enterprises, lied to the Chancery Court in pursuit of that goal, and produced a fabricated and forged operating agreement in support of their motion to appoint a receiver. When the debtor states that "[a]t best the [adversary] Complaint alleges that [the debtor] and her Chancery Court Litigation coplaintiffs made improper filings or misrepresentations to the Chancery Court … which allegedly led the Chancery Court to impose a receivership" the debtor simultaneously demonstrates that she understands precisely the fraud the adversary plaintiffs are alleging and that it is pleaded in the adversary complaint. In summary, the debtor's lying to the Chancery Court with the intent to

steal Fuller Enterprises is the fraud the adversary plaintiffs assert she perpetrated, and the adversary complaint and attached Chancery Court judgment clearly describe a scheme to deprive another of property or a legal right—actual fraud. The adversary plaintiffs allege that the use of deception to obtain the appointment of a receiver in furtherance of the claim of ownership resulted in the debt to Fuller Enterprises of the $103,230.31 in fees it paid to the receiver that the Chancery Plaintiffs caused to be wrongfully appointed. Fuller Enterprises has pled the elements of a claim under § 523(a)(2)(A).

Tina Ware's debt presents a different problem. The § 523(a)(2)(A) exception requires not only that fraud occurred, but that the specific debt at issue is for something obtained by that fraud. *See Cohen v. de la Cruz*, 523 U.S. at 218. The Supreme Court in *Cohen* explains that "the phrase 'to the extent obtained by' in § 523(a)(2)(A) … makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt." *Id.* Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge." *Id.* "This means that as long as the debt in question arises out of the debtor's fraud, false pretenses, or false representation, the debt should be held nondischargeable under § 523(a)(2)(A)." *Lowry v. Nicodemus (In re Nicodemus)*, 497 B.R. 852, 859 (B.A.P. 6th Cir. 2013). For Fuller Enterprises, the alleged nexus is direct: the debtor lied to the Chancery Court to obtain the wrongful appointment of a receiver, and Fuller Enterprises was damaged to the extent it was required to pay the receiver's fees. For Tina Ware, no equivalent nexus is readily apparent. The Chancery Court's award to Tina Ware reflects what she was forced to spend defending the "Abusive Civil Action," a debt created by a statutory remedy, not a debt that is traced to something produced by fraud. Section 523(a)(2)(A) does not reach this debt, but as discussed in the following section, § 523(a)(6) is well suited to it.

III.

Section 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor. To prevail, a plaintiff must prove the judgment debt arises from the defendant's willful and malicious conduct. *See Steier v. Best (In re Best),* 109 F. App'x 1, 5 (6th Cir. 2004). These are two independent requirements. *See MarketGraphics Research Grp., Inc. v. Berge (In re*

*Berge)*, 953 F.3d 907, 916 (6th Cir. 2020). Willful conduct requires actual intent to cause injury, not merely a deliberate act that leads to injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Sixth Circuit applies only a subjective standard, asking whether the debtor was motivated by a desire to inflict injury. *See In re Berge*, 953 F.3d at 915 (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999)).

Tina Ware states a claim under § 523(a)(6). The adversary complaint alleges that the Chancery Court found the Chancery Plaintiffs acted "primarily to harass, annoy, and maliciously injure Tina Ware," and that the Chancery Plaintiffs brought and litigated the Chancery Court proceeding without probable cause, using improperly acquired, false, fraudulent, altered, and forged documents and false affidavits. The Chancery Court found that the actions taken by the Chancery Plaintiffs were in conscious disregard of their duties and without just cause or excuse, as part of a scheme to steal or fraudulently acquire Fuller Enterprises. The debt is the $510,429.89 award for reasonable attorney fees and costs pursuant to Tenn. Code Ann. § 29-41-106(a)(2), a part of Tennessee's Abusive Civil Action statutory provisions to deter and remedy litigation abuse intended to harass or maliciously injure a defendant. *See* Tenn. Code Ann. § 29-41-101, *et seq*.

The debtor argues this debt is not of the type covered by § 523(a)(6), relying on *Geiger* for the proposition that fee-shifting remedies cannot constitute nondischargeable injury. *Geiger* holds that willfulness under § 523(a)(6) requires actual intent to cause injury rather than a deliberate act that leads to injury. *See Kawaauhau v. Geiger* 523 U.S. at 61. It says nothing about whether attorney fee awards fall within the statute's reach. Attorney fees awarded for willful and malicious conduct are regularly found nondischargeable under § 523(a)(6). *See In re Suarez*, 400 B.R. 732, 740 (B.A.P. 9th Cir. 2009) (concluding that attorney fees and costs awarded to a judgment creditor in relation to a debtor's underlying willful and malicious contemptuous conduct, even when no compensatory judgment debt exists, constitute a nondischargeable debt under section 523(a)(6)), *aff'd*, 529 F. App'x 832 (9th Cir. 2013); *Hughes v. Arnold*, 393 B.R. 712, 718–19 (E.D. Cal. 2008) (attorney fee award resting on the debtor's bad faith conduct in knowingly initiating and prosecuting a groundless sexual harassment claim was nondischargeable under

§ 523(a)(6), *aff'd sub nom., In re Hughes*, 347 F. App'x 359 (9th Cir. 2009); *Jan S. Weinstein & Associates, Ltd. v. Lymberopoulos (In re Lymberopoulos)*, 453 B.R. 340, 344 (Bankr. N.D. Ill. 2011) (attorney fees and costs awarded under statute were nondischargeable under § 523(a)(6) notwithstanding the lack of a "primary debt"); *Nolan v. Smith (In re Smith)*, 321 B.R. 542, 548 (Bankr. D. Colo. 2005) (attorney fees and costs were awarded "with respect to" or "by reason of" the debtors' underlying conduct giving rise to the litigation and assertion of a meritless defense relating to their underlying conduct). As those courts recognized, nondischargeable debt under § 523(a)(6) is not limited to debt arising out of an intentional tort. The statute excepts from discharge any debt for willful and malicious injury. Attorney fees awarded because the underlying conduct was willful and malicious fall squarely within that language. *See Hughes v. Arnold*, 393 B.R. at 718–19. Tina Ware asserts that the Chancery Court's judgment has a preclusive effect on the § 523(a)(6) elements. Although the issue is not ripe, the court notes that collateral estoppel has been applied to establish the nondischargeability under § 523(a)(6) of a judgment for attorney fees and costs awarded under Tennessee's Abusive Civil Action statute.

> The Tennessee court found that the Tennessee Case was filed with the intent to cause financial injury as well as injury to the health and well being of the Plaintiffs. This finding satisfies the willfulness requirement under § 523(a)(6): Defendant intended the injury caused. Additionally, the Tennessee court found that the Tennessee Case was filed without just cause. This finding satisfies the maliciousness requirement under § 523(a)(6): the injury was malicious because it was excessive and filed without just cause.

*Buchanan v. Parks (In re Parks)*, No. 19-56235-SMS, 2020 WL 5775972, at *6 (Bankr. N.D. Ga. Sept. 25, 2020). Tina Ware states a claim under § 523(a)(6).

Fuller Enterprises likewise states a claim under § 523(a)(6). The complaint alleges that the Chancery Plaintiffs, using a forged operating agreement and false statements made under oath, deliberately pursued the appointment of a receiver as a means of asserting control over Fuller Enterprises. A party who intentionally seeks the appointment of a receiver knows with substantial certainty that a receiver will incur fees, and that those fees will fall on the company for which the receiver has been appointed. The willful element is established by the plausible allegations that the damage caused to Fuller Enterprises resulted from the Chancery Plaintiffs' wrongful request for the appointment of a receiver. *See In re Markowitz*, 190 F.3d at 464 (a debtor acts willfully

when she desires to cause the consequences of her act or believes those consequences are substantially certain to result). The complaint further alleges that the Chancery Plaintiffs brought and litigated the Chancery Court proceeding without probable cause, using improperly acquired, false, fraudulent, altered, and forged documents, and false statements made under oath, all without just cause or excuse, as part of a scheme to steal or fraudulently acquire Fuller Enterprises. These are sufficient allegations to establish the malicious element.

IV.

Two other matters remain to be considered. The first pertains to the "collective pleading" in the complaint. The debtor states that "the Complaint does not tie (i) a specific creditor, (ii) a specific debt, and (iii) the required statutory elements together in a plausible, fact-specific way for each [adversary] Plaintiff," and "[t]hat failure warrants dismissal under Rule 12(b)(6)." This objection to the lack of pleading in a fact-specific way of the elements of the claims by specific creditors with specific debts is remedied for the most part by the dismissal of Mason Robinette and the Estate of Will Robinette as parties to the adversary complaint. As for any concern expressed by the debtor that the collective pleading "prevents the Court from performing the core analysis required under both subsections alleged" by Fuller Enterprises and Tina Ware, it is misplaced. The required core analysis is set forth above. Finally, it appears that the joinder of Fuller Enterprises and Tina Ware as adversary plaintiffs is appropriate under Fed. R. Civ. P. 20(a)(1) because they assert a right to relief arising out of the same occurrence and share common questions of law or fact that may arise in the adversary proceeding. But if not, severance would be the appropriate remedy for misjoinder of parties, not dismissal. *See* Fed. R. Civ. P. 21.

The second matter relates to the adversary plaintiffs' statement in their complaint in paragraph 136 concerning the nondischargeability determination of "attorney fee and expense awards … to be made in connection with" the Chancery Court proceedings, and "any future award of damages, sanctions, and/or attorney fees and expenses … based on the wrongful conduct of [the debtor] in the" Chancery Court proceedings. The debtor states that "[c]ollateral estoppel cannot apply to unknown, not yet entered awards because the issue has not been actually litigated or necessarily decided." The debtor adds that "to the extent [the adversary] Plaintiffs target post

petition fees or sanctions, those are not current prepetition debts within section 727(b)." The court assumes that Tina Ware is referring primarily to the appellate court's award of her attorney fees and costs for which the Abusive Civil Action was remanded to the Chancery Court for determination of the amount. In addition, the adversary plaintiffs remark in their response that "Tina Ware has also requested an award of fees and costs incurred in responding to Motions to Recuse filed by [the debtor] in the" Chancery Court proceeding. The court foresees no problem in determining the dischargeability of unliquidated debts, even by the use of collateral estoppel, as bankruptcy courts routinely do so. As for the effects of collateral estoppel or whether the debts would be postpetition, those issues are premature.

An order will be entered contemporaneously with the filing of this memorandum opinion granting in part and denying in part the debtor's motion to dismiss. Mason Robinette and the Estate of Will Robinette will be dismissed as plaintiffs because they have not alleged that a debt is owed to them individually. Tina Ware's § 523(a)(2)(A) claim will be dismissed because it does not allege a debt produced by the debtor's fraud. Although the adversary plaintiffs generally requested an opportunity to amend the complaint in lieu of dismissal, the deficiencies noted do not lend themselves to correction by amendment. In all other respects, the debtor's motion to dismiss will be denied.

# # #